MOSES (UNITED STATES v.). See Cases Nos. 15,824 and 15,825

## Case No. 9,874.

### The MOSHER.

[4 Biss. 274.] [1]

Circuit Court, N. D. Illinois.   Oct., 1868.

TOWAGE — REASONABLE DILIGENCE — SKILL — KNOWLEDGE OF CHANNEL—DUTY AFTER STRANDING.

1. The measure of a tug's duty is reasonable diligence and ordinary skill. The tug is not an insurer of the safety of the tow, nor held to the highest nautical skill.

2. The tug is bound to know the ordinary proper channel, but the responsibility is changed where the channel is shifting.

3. A schooner having taken the chances of entering in a storm, a harbor with a shifting channel, the tug is not to be held responsible, in the absence of proof of negligence, if the schooner touches some ridge of sand.

4. The tug is only bound to employ those means consistent with her own safety; she is not obliged to lay by the tow, when that would endanger herself.

Appeal from decree of the district court dismissing a libel filed by Sallie F. Dobbie and others, owners of the shooner Nicaragua, against the tug Mosher, to recover damage caused by the alleged negligence of the tug while towing the Nicaragua.

Miller, Van Arman & Lewis, for libellants.
George B. Hibbard, for insurance company.
Sandford B. Perry, for cargo.
Robert Rae, for respondents.

DAVIS, Circuit Justice. This case was argued at the last fall term by eminent counsel. I have since read all the testimony carefully, and although the case is not free from doubt, I am unable to see wherein the views of the district court are incorrect. I shall content myself with stating the ground on which I justify this conclusion.

The schooner Nicaragua, owned by libellants, on the 6th of August having encountered a heavy wind and high sea, which continued during the day, came to anchor, and shortly after, the tug Mosher took her in tow. The schooner furnished the tow line. The first broke; a second bore the strain. The vessel in the act of being towed into the har-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

bor was stranded and ultimately lost. Is the tug responsible for this loss?

It is charged that the accident happened through the negligence and want of care of the officers of the tug, and that, at any rate, the disaster would not have been so ruinous, if these officers had used proper efforts to relieve the Nicaragua. The first question is, what degree of diligence and skill was required of the tug? The rule is well settled that reasonable diligence and ordinary skill is the measure of the tug's duty. The tug did not engage to insure the safety of the tow, nor for the use of the highest nautical skill. I think Judge Drummond stated the rule fairly, that the tug is bound to know the ordinary and proper channel into the harbor and to exercise reasonable skill under the circumstances, in towing the vessel.

As usual in cases of this kind the testimony is very conflicting and not easily reconcilable. It is claimed the schooner was kept windward of the tug. The weight of testimony is to the contrary. Neither do I think the tug went too far south. In my opinion the case turns on the condition of the channel at the time of the accident. The responsibility would have been very different if the channel was regular and established. Like the district judge, I do not wish to relax the need of caution of tugs in towing vessels nor establish harsh rules to make them insurers of property. There was no settled channel; it was in a shifting state. The old channel into the harbor had been substantially abandoned; it had been partly made in 1863–4, and about the time of this accident, whenever the dredging boats could work, they were dumping in one place and taking ground from another. The weather was changing, and during storms shoals would form. The channel was, in fact, a moving, changing channel. If an accident happened in towing a vessel through such a channel during a storm of several days' continuance, the tug, if it was managed with reasonable nautical skill and judgment, cannot be held responsible.

In what respect did the Mosher show less diligence and skill than required? The schooner having taken the chances of entering the harbor in a storm, the tug is not to be held responsible, in the absence of proof of negligence, if the schooner touched some ridge of sand. It is urged that she went aground on the old sand-bar. Although satisfied that she was ultimately wrecked there, I am not satisfied she first struck there. The winds and waves drove her south, and the probability is that her first position was changed.

But the tug is blamed for not using more effort than she did to get the schooner off the bar; in other words, is charged with fault in abandoning the schooner too soon. It is hard to get at the truth, for the witnesses on each vessel differ materially in their account of what occurred. At the argument it did seem to me that the tug left the schooner to

her fate sooner than she ought to have done, but since reading the testimony, I cannot say that she did not employ all the means practicable and consistent with her own safety. The captain of the tug was not obliged to stay by the schooner if in good faith he believed he would endanger his own vessel. On both points he is supported by the testimony. I think the decree dismissing the libel should be affirmed.

NOTE. As to the duty of a tug in a narrow channel, and especially with reference to a propeller meeting the tug and tow, consult The Alleghany [Case No. 204], and cases there cited. As to duty of tug with respect to speed, see The Alleghany [Id. 205]; and as to respective duties of tug and tow, consult The Brothers [Id. 1,969], and numerous authorities there cited. For the relative duty and liability of the tow, consult a recent opinion by Judge Drummond, The Margaret [Id. 9,068], July, 1873; also, The I. M. Lewis and The Aline [Id. 6,991], June 13, 1874.